BUCHALTER
A Professional Corporation
Josh H. Escovedo, State Bar No. 284506
Berit L. Elam, State Bar No. 307389
Michelle Q. Pham, WA State Bar No. 44286 (pro hac vice)
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone: 916.945.5170
Email: jescovedo@buchalter.com; belam@buchalter.com; mpham@buchalter.com

Attorneys for Plaintiff
Modern Event Furniture

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MODERN EVENT FURNITURE, a Florida corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SACRAMENTO EVENT CO LLC, a California limited liability company; JENNIFER CORRIGAN, an individual; and Does 1 through 20, inclusive,<br><br>Defendants. | Case No. 2:23-cv-02089-JDP<br><br>**SECOND AMENDED COMPLAINT** |

Plaintiff Modern Event Furniture ("MEF") hereby alleges as follows:

**INTRODUCTION**

1. MEF is the leading wholesale manufacturer to the special event and trade show industry. MEF has expended significant resources to create a cutting-edge collection of event furniture that includes high-quality products built to withstand the day-to-day use of the event industry. Through MEF's substantial efforts and over 20 years in the industry, it has obtained common-law trade dress rights. Consumers in North America and beyond now recognize MEF's designs as a source identifier.

2. Sacramento Event Co LLC ("SEC") is owned by Jennifer Corrigan and provides event furniture rental services in Sacramento, California. Ms. Corrigan is a former customer of

MEF and its affiliate that provides event furniture rental services in Toronto, Canada. When Ms. Corrigan relocated from Canada to Sacramento, she started SEC.

3. Although Ms. Corrigan initially purchased some furniture from MEF to rent to her customers, she later decided it would be more economical to provide photographs and technical information related to MEF's products to a third-party manufacturer in China and have that manufacturer produce counterfeit products that appear nearly identical to MEF's products, but of significantly lower quality. These actions violated MEF's common-law trade dress rights.

4. Making matters worse, Defendants also named its counterfeit products with the same names used by MEF. These actions furthered the façade that SEC is affiliated with MEF or at least renting MEF furniture to its customers.

5. The harm caused by SEC's unfair business practices and trade dress violations has grown exponentially, as the third-party manufacturer in China has now begun using MEF's intellectual property to sell knockoff furniture not only to SEC but also to other companies. This would not have occurred but for SEC's actions.

6. SEC was not done, however. In yet another act of intellectual property theft, SEC scraped MEF's website and social media platforms for images of MEF's products and then used those images on its website and social media platforms in violation of MEF's copyrights.

7. MEF sent SEC a cease-and-desist letter hoping to end this flagrant misconduct. While SEC took down the copied images of MEF's products from its website and social media platforms, SEC has refused to fully comply with MEF's demands and continues to use MEF's designs to create cheap versions of MEF's products to market as if they were MEF-produced.

8. SEC's refusal to cease its unfair business practices and trade dress violations necessitated this action.

**PARTIES**

9. Plaintiff Modern Event Furniture is a Florida corporation with its principal place of business in Canada. MEF is a wholesale manufacturer that sells furniture to rental companies that rent the furniture purchased from MEF to third parties requiring event furniture.

10. Defendant Sacramento Event Co LLC is a California limited liability company with its principal place of business located at 4872 10th Avenue, Sacramento, CA 95820. SEC is in the event furniture rental business.

11. Defendant Jennifer Corrigan is an individual residing in Sacramento County, California. Ms. Corrigan is the principal of SEC and a former client of MEF and its related rental company Luxe Rentals.

12. The actual names and capacities of Does 1 through 20, inclusive, are unknown to MEF, who therefore sues these Doe defendants by such fictitious names. MEF will seek leave to amend this Complaint to show the actual names and capacities of said Does when they have been ascertained. MEF is informed and believes, and thereon alleges, that each of the Doe defendants is responsible for the actions described below.

13. On information and belief, at all times mentioned below, each defendant, including the Doe defendants, acted individually and/or as the agent, co-conspirator, aider, abettor, joint venture, alter ego, third-party beneficiary, employee, officer, director, or representative of the other defendants, and in doing the things averred below, acted within the course and scope of such agency, employment, or conspiracy, and with the consent, permission, and authorization of each of the remaining defendants. On information and belief, all actions of each defendant, as averred in the causes of action alleged below, were ratified and approved by every other defendant or their officers, directors, or agents. SEC, Corrigan, and the Doe defendants are collectively referred to below as "Defendants."

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, specifically the Lanham Act (15 U.S.C. § 1125). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this district.

///

///

## GENERAL ALLEGATIONS

16. MEF is the leading wholesale manufacturer to the special event and trade show industry. MEF's mission is to revolutionize rental furnishings and décor by raising the bar in design and functionality. Through years of research and development, and decades of perfecting its designs and functionality, MEF now manufactures the most complete and versatile collection available to rental companies. MEF's products are high quality and built to withstand the day-to-day demands of the industry while still offering a sleek and polished look that represents the latest trends in event designs. MEF is committed to surpassing the expectations of event designers, producers, venues, and rental providers by continuously introducing new and innovative styles, finishes, and concepts, providing a striking vision that exceeds expectations. By providing such high-quality designs and functionality for over 20 years, MEF and its designs have become widely known throughout the event industry across North America and beyond.

17. Over the last 20 years, MEF and its affiliates have expended significant resources creating MEF's product collection. MEF has devoted more than 10,000 hours of human capital and over $100,000 toward developing its collection and generating goodwill in said collection. Through its innovative, distinctive products and resulting accumulation of goodwill, MEF has obtained common-law trade dress rights in each of its designs.

18. SEC is an event-furniture rental company located in Sacramento. SEC is owned by Defendant Jennifer Corrigan, who previously resided in Canada, where MEF has its corporate headquarters, and had been a customer of MEF and its affiliate Luxe Rentals since as early as 2014. As a former MEF and Luxe Rentals customer, Corrigan is intimately familiar with MEF's high-quality designs and notoriety in the industry. Corrigan eventually relocated to the United States, specifically Sacramento, California, and started SEC.

19. At some point in 2017, Ms. Corrigan informed MEF that she intended to open an upscale event-furniture rental company in Sacramento. To that end, she asked to do an in-person visit and tour of Luxe Rentals, which Luxe Rental agreed to. During that visit, Corrigan learned about MEF's products, its designs, its functions, and how to operate a rental company. Ms. Corrigan led MEF to believe it would purchase MEF furniture to supply her new business.

20. When SEC first began doing business in California, it purchased multiple pieces of furniture from MEF and used those pieces in the ordinary course of its business. Unfortunately, SEC eventually realized it could increase its profitability by cutting corners and purchasing cheaper, lower-quality furniture substantially similar in appearance to MEF's cutting-edge designs, thereby giving its consumers the impression that they were renting MEF furniture without SEC incurring the same expense as it would by purchasing from MEF.

21. In utter disregard for MEF's intellectual property rights, SEC provided a foreign manufacturer with photographs, measurements, and other information concerning MEF's collection and directed the foreign manufacturer to recreate various pieces of furniture from MEF's collection using lower-quality materials to decrease costs. While such an allegation would generally be made on information and belief, MEF knows for certain and has evidence confirming this occurred. Specifically, MEF obtained communications between Defendants and a third-party foreign manufacturer that Defendants believed to be the source of MEF's products. In these communications, Defendants attempted to purchase MEF's designs directly from the source. While Defendants mistook the origin of the products, SEC was still able to procure counterfeit products that appear substantially similar to MEF's products. These products are likely to create consumer confusion, which is exactly what SEC aims to do.

22. In April 2023, MEF visited SEC's third-party manufacturer in China. During that visit, the manufacturer admitted that he is Corrigan and SEC's manufacturer, and that Corrigan had provided him with photos and design specifications that enabled him to reproduce MEF's products in a cheaper, less luxurious form.

23. In addition to design theft, SEC engaged in other intellectual property misappropriation. To further the façade that SEC was renting MEF furniture to its customers, SEC adopted the same names as MEF for the designs that it misappropriated from MEF, creating a false designation of association with MEF. For example, SEC misappropriated the following product names from MEF: MONDRIAN, BERNHARDT, MAXWELL, MAYFAIR, ESSEX BAR BACK, AVENUE BAR, PARAMOUNT STOOL, MERCER SILHOUETTE, MERCER SIDE TABLE, CARLETON COFFEE TABLE, BENTLEY, CAPITAL, RIVINGTON, and

REGENCY. MEF has consistently used these names throughout the United States and internationally in connection with furniture for over 20 years.

24. In addition to the trade-dress infringement, Defendants, adding insult to injury, scraped the images of MEF's products from its website and social media platforms and used those exact images on SEC's own website and social media platforms to market its counterfeit products to its customers and potential customers, in violation of MEF's copyrights to the photos.

25. In response to a cease-and-desist letter from MEF, SEC changed the names of its products and removed most of the infringing images from its website and social media platforms.[1] But that doesn't absolve SEC of its misconduct. In fact, those acts of infringement remain directly relevant to this dispute as they demonstrate Defendants' intent to steal MEF's intellectual property and misappropriate its goodwill. Such actions are malicious, oppressive, and fraudulent as those terms are defined by Civil Code section 3294, warranting exemplary damages.

26. MEF has made reasonable efforts to resolve this matter without litigation. However, despite these efforts, Defendants have refused to cease their unfair business practices and infringement of MEF's common-law trade-dress rights, necessitating this action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Unfair Competition - Bus. & Prof. Code § 17200
### (Against All Defendants)

27. MEF realleges and incorporates by reference each allegation contained in the above paragraphs as if stated below.

28. Prior to opening her business, Ms. Corrigan toured MEF's affiliated rental company, Luxe Rentals, to learn about MEF's products, designs, functions, and operations. Ms. Corrigan led MEF to believe she would purchase furniture from MEF to supply her new furniture rental business, thereby incentivizing MEF to share details about its products and designs.

[1] Notably, however, SEC's website still contains event photos showing the infringing designs and creating the false impression that SEC rents MEF furniture.

29. Instead, after SEC was formed, it purchased a few initial pieces from MEF, but then quickly started using MEF's product line and designs (which Ms. Corrigan had learned about through the Luxe Rentals tour) to produce its own furniture instead.

30. SEC designed its products by providing photographs and other technical data regarding MEF's products to a third party and directing the third-party manufacturer to generate cheaper, counterfeit products nearly identical to MEF's products in appearance.

31. In doing so, SEC created lower-quality products that appear substantially the same as MEF's products.

32. SEC intended for customers to assume the counterfeit products were produced by MEF, when in reality they were not and are of lower quality. Through the reduced cost of its cheap furniture production, SEC is able to offer lower costs to better entice customers who believe they are getting MEF products.

33. In furtherance of this scheme, SEC copied the images of MEF's products and their names from MEF's website and social media platforms and posted them to SEC's own website and platforms, thereby portraying identical furniture pieces with the same names as MEF. SEC's duplication of MEF's furniture catalog remained online until MEF forced the removal through a cease-and-desist letter (though some images remain), but the damage was done. SEC had successfully lured customers who believed they were getting MEF's line of furniture instead of SEC's cheap copy.

34. SEC's conduct constitutes unlawful, unfair, and fraudulent business acts or practices, and unfair, deceptive, untrue, or misleading advertising as defined by the Business and Professions Code.

35. SEC's conduct proximately harmed MEF in multiple ways, including, but not limited to: (1) SEC successfully took customers from MEF by pretending to offer MEF's products at a reduced price; (2) SEC damaged MEF's reputation by providing customers who expected MEF's quality products with low-quality substitutes; and (3) SEC diluted MEF's unique product line by introducing near-identical versions of the same pieces into the market.

36. Because of the aforementioned unfair competition, MEF has suffered damages and is entitled to injunctive relief and restitution.

**SECOND CAUSE OF ACTION**
**Common-Law Unfair Competition**
**(Against All Defendants)**

37. MEF realleges and incorporates by reference each allegation contained in the above paragraphs as if stated below.

38. SEC's above-mentioned conduct constitutes unlawful, unfair, and fraudulent business acts or practices, and unfair, deceptive, untrue, or misleading advertising as defined by common law.

39. SEC’s misconduct proximately harmed MEF.

40. Because of the aforementioned unfair competition, MEF has suffered damages and is entitled to injunctive relief and restitution.

**THIRD CAUSE OF ACTION**
**Trade-Dress Infringement - 15 U.S.C. § 1125(a)**
**(Against All Defendants)**

41. MEF realleges and incorporates by reference each allegation contained in the above paragraphs as if stated below.

42. MEF’s carefully cultivated lines of furniture feature protected trade dresses.

43. SEC procured its products by providing photographs and other technical data from MEF's products to a third party that generated counterfeit products nearly identical to MEF’s. Accordingly, SEC’s product designs are confusingly similar to MEF’s in violation of the Lanham Act.

44. The features of MEF’s trade dresses are primarily non-functional, such as specific tufting patterns in upholstery, eye-catching proportions between seat and backrest, and consistent use of metallic frames in contrast with luxurious and bold upholstery. A non-exhaustive list of examples, with photos, of MEF’s non-functional trade dresses and SEC’s counterfeit products is attached hereto as **Exhibit 1**.

45. The features of MEF’s trade dresses are also inherently distinctive. For example, the use of specific diamond or linear tufting patterns in certain furniture is uncommon and makes

those pieces aesthetically unique and quickly identifiable as MEF pieces. Additionally, the imbalanced proportions between the seat and backrest of certain chairs is a bold, eye-catching, and completely unique feature that separates those designs from others on the market. The consistent use of simple metallic bases and frames—contrasting with the luxurious upholstery and unique detailing of each piece—creates a clear throughline in MEF's catalog, making each design readily identifiable as MEF's. Through these and other inherently distinctive designs of its pieces (as detailed in Exhibit 1), MEF's products have acquired secondary meaning in the marketplace. After two decades of being in business and creating these consistent designs, MEF's products are recognized by consumers worldwide as belonging to MEF.

46. SEC's replication of MEF's distinctive, non-functional design elements creates consumer confusion as to which products are truly MEF's, which has and will continue to mislead customers into procuring SEC's low-quality counterfeits believing they are MEF's products.

47. Screenshots of SEC website pages featuring its products infringing MEF's trade dress are presented in Exhibit 1. Again, the listed products are not exhaustive but illustrative, demonstrating representative examples of the infringement.

48. As a result of SEC's violation of MEF's rights, MEF is entitled to recover damages equal to SEC's profits, MEF's sustained damages, and attorney's fees and costs incurred. MEF is also entitled to treble and statutory damages because SEC is utilizing counterfeit products.

49. MEF is also entitled to exemplary damages because SEC's conduct is malicious, oppressive, and fraudulent, as defined by Civil Code section 3294.

50. Upon establishing a violation of the Lanham Act, MEF will be entitled to a rebuttable presumption of irreparable harm and will therefore be entitled to an injunction.

**FOURTH CAUSE OF ACTION**
**Common-Law Trade-Dress Infringement**
**(Against All Defendants)**

51. MEF realleges and incorporates by reference each allegation contained in the above paragraphs as if stated below.

///

52. MEF's carefully cultivated lines of furniture feature protected trade dresses.

53. SEC procured its products by providing photographs and other technical data from MEF's products to a third party that generated counterfeit products nearly identical to MEF's. Accordingly, SEC's product designs are confusingly similar to MEF's.

54. The features of MEF's products are primarily non-functional.

55. The features of MEF's trade dresses are also inherently distinctive.

56. SEC's replication of MEF's distinctive, non-functional design elements causes consumer confusion, misleading customers into purchasing SEC's low-quality counterfeits under the false belief that they are genuine MEF products, and will continue to do so.

57. Because of SEC's violation of MEF's rights, MEF is entitled to recover damages equal to SEC's profits, MEF's sustained damages, and costs of the action.

58. MEF is also entitled to exemplary damages because SEC's conduct is malicious, oppressive, and fraudulent, as those terms are defined by Civil Code section 3294.

59. MEF is also entitled to injunctive relief under Code of Civil Procedure section 525 et seq. to preclude SEC from using such counterfeit products in the future.

**FIFTH CAUSE OF ACTION**
**False Designation of Origin - 15 U.S.C. § 1125(a)**
**(Against All Defendants)**

60. MEF realleges and incorporates by reference each allegation contained in the above paragraphs as if stated below.

61. SEC has used counterfeit product designs and MEF's copyright-protected images in connection with its event furniture rental business to create a false designation of origin for its products.

62. SEC's actions are likely to create consumer confusion or to cause consumers to falsely believe an affiliation, connection, or association between SEC and MEF exists. Specifically, consumers are likely to believe that SEC is using MEF furniture when SEC is actually using counterfeit products of substantially lower quality.

63. As a result of SEC's violation of MEF's rights, MEF is entitled to recover damages equal to SEC's profits, MEF's damages sustained, and attorney's fees and costs incurred.

MEF is also entitled to treble and statutory damages because SEC is utilizing counterfeit products. Additionally, MEF is entitled to exemplary damages because SEC's conduct is malicious, oppressive, and fraudulent, as defined by Civil Code section 3294.

64. Upon establishing a violation of the Lanham Act, MEF will be entitled to a rebuttable presumption of irreparable harm and will therefore be entitled to an injunction.

**SIXTH CAUSE OF ACTION**
**False Advertising - Bus. & Prof. Code § 17500**
**(Against All Defendants)**

65. MEF realleges and incorporates by reference each allegation contained in the above paragraphs as if stated below.

66. SEC intentionally disseminated various untrue and misleading representations with the intent to obtain patronage for its event rental company. Specifically, SEC utilized counterfeit designs that are nearly identical to MEF’s product designs and even MEF’s copyright-protected photographs from its website and social media platforms to give its consumers the false impression that SEC’s services are endorsed, sponsored by, associated with, or otherwise related to MEF.

67. SEC knew or should have known these representations were untrue or misleading, but it intentionally disseminated the advertisements to increase revenue.

68. SEC circulated these advertisements throughout California and internationally through SEC’s website, social media platforms, and various other advertising media.

69. The false advertisements have and will continue to cause consumer confusion. Because of MEF’s common-law trade-dress rights, as well as SEC’s use of MEF’s copyright-protected images, consumers will likely believe that SEC is somehow associated with or endorsed by MEF even though that is not true.

70. SEC’s conduct has proximately harmed MEF.

71. MEF has suffered damages due to SEC's conduct and is entitled to injunctive relief and restitution.

///

///

**PRAYER FOR RELIEF**

WHEREFORE, MEF prays for judgment as follows:

1. For general damages in an amount to be proven at trial.

2. For consequential damages in an amount to be proven at trial.

3. For disgorgement of profits under the Lanham Act.

4. For statutory damages under the Lanham Act.

5. For treble damages under the Lanham Act.

6. For exemplary damages under Civil Code section 3294.

7. For restitution in an amount to be proven at trial.

8. For an accounting.

9. For an injunction prohibiting SEC from using MEF's intellectual property without MEF's consent or otherwise engaging in unfair competition or false advertising as the Business and Professions Code defines those terms.

10. For an order directing SEC to destroy all counterfeit products in its possession, custody, or control, and to remove all intellectual property belonging to MEF from SEC's website, social media platforms, and other marketing platforms or collateral, and if the intellectual property cannot be removed, then to destroy the item incorporating MEF's intellectual property.

11. For prejudgment interest.

12. For post-judgment interest.

13. For attorney's fees and costs.

14. For such other and further relief as the Court may deem proper.

DATED: October 1, 2025

BUCHALTER
A Professional Corporation

By: ______________________________
Josh H. Escovedo
Berit Elam
Michelle Q. Pham (pro hac vice)
Attorneys for Plaintiff
Modern Event Furniture

# Exhibit 1 – Examples of MEF's Trade Dress with Comparison to SEC's Infringing Pieces

**MEF's Avenue 1/4 Bar**




MEF's Avenue 1/4 Bar Trade Dress Design: has a unique semi-circular shape, giving it a curved, rounded front with clean, smooth lines. The bar's frame is outlined in MEF's quintessential simple and sleek, yet eye-catching polished metallic trim, which is common to all MEF bar and shelving pieces and makes MEF designs identifiable from others in the market.

**SEC's Infringing Piece: "The 1/4 Bar"**



**MEF's Grand Bar Back**




MEF's Grand Bar Back Trade Dress Design: features a uniquely cylindrical structure in combination with the clean, smooth lines common to MEF pieces. The frame is once again outlined in MEF's quintessential simple and sleek, yet eye-catching polished metallic trim, as common to all MEF bar and shelving pieces, making this design identifiable from others in the market.

**SEC's Infringing Piece: "Bar Back Tower"**



**MEF's Bernhardt Ottoman**




MEF's Bernhardt Ottoman Trade Dress Design: comprised of an uncommon tufted design. Richly upholstered with deep button tufts that create a unique symmetrical and interconnected pattern across its entire surface. In contrast with the luxurious and bold upholstered design, the ottoman sits on MEF's classic simple polished metallic base, providing an eye-catching interplay of textures. The aforementioned individual elements in the design, as well as the contrast between them, are unique and common to all MEF seating pieces, setting them apart from others in the market.

**SEC's Infringing Piece: "Tufted Ottoman Round"**



**MEF's Kincaid Inside Round 16"**




MEF's Kincaid Inside Round 16" Trade Dress Design: has a curved, semi-circular structure with a gently sloped backrest that is adorned with subtle vertical linear tufting. This tufting pattern is unique and quickly identifiable as a common aesthetic theme in MEF pieces. The seating is upholstered in velvet, providing a luxurious texture which contrasts with the by MEF's simple and sleek polished metallic legs. These distinct features separately, and in combination, provide a visual appearance uniquely identifiable as a MEF design.

**SEC's Infringing Piece: "Herman Inside Round Lounge"**



**MEF's Kincaid Outside Round 16"**




MEF's Kincaid Outside Round 16" Trade Dress Design: has a curved, semi-circular structure with a gently sloped backrest that is adorned with subtle vertical linear tufting. This tufting pattern is unique and quickly identifiable as a common aesthetic theme in MEF pieces. The seating is upholstered in velvet, providing a luxurious texture which contrasts with the by MEF's simple and sleek polished metallic legs. These distinct features separately, and in combination, provide a visual appearance uniquely identifiable as a MEF design.

**SEC's Infringing Piece: "Herman Outside Round Lounge"**



**MEF's Kincaid Loveseat 18"**




MEF's Kincaid Loveseat 18" Trade Dress Design: maintains the gently sloped backrest with subtle vertical linear tufting that appears on many MEF pieces, making it easily identifiable as part of the MEF collection. As with other MEF seating pieces, the upholstry features a luxurious fabric which contrasts with MEF's sleek polished metallic legs. These distinct features separately, and in combination, are uniquely identifiable as a MEF design.

**SEC's Infringing Piece: "Herman Loveseat"**



**<u>MEF's Kincaid Chair 16"</u>**




MEF's Kincaid Chair Trade Dress Design: maintains the gently sloped backrest with subtle vertical linear tufting that appears on many MEF pieces, making it easily identifiable as part of the MEF collection. As with other MEF seating pieces, the upholstry features a luxurious fabric which contrasts with MEF's sleek polished metallic legs. These distinct features separately, and in combination, are uniquely identifiable as a MEF design.

**<u>SEC's Infringing Piece: "Herman Chair"</u>**



**<u>MEF's Kincaid Borne</u>**



MEF's Kincaid Borne Trade Dress Design: features aesthetically unique arrangement of seating through four curved ottomans positioned around a tall central cone-shaped structure. The conicular seatback features MEF's unique linear tufting pattern. The imbalanced proportion between the seat and height of the backrest is also a uniquely MEF design that appears in multiple pieces from its furniture line. As with other MEF pieces, the luxurious velvet (available in a variety of colors) contrasts with MEF's signature sleek polished metallic legs supporting the ottomans. These individual features, as well as their combination, sets Kincaid Borne apart from other ottoman designs in the market.

**<u>SEC's Infringing Piece: "Herman Settee"</u>**



**MEF's Mayfair**




MEF's Mayfair Trade Dress Design: this high-back chair is characterized by its unique proportions. As with other MEF pieces, it features an imbalance of proportions between the seat and backrest to create a bold and eye-catching design. Also like other MEF pieces, the Mayfair features a unique diamond-shape tufted upholstery pattern, which adds a textured look and an element of traditional elegance. The chair's armrests are rolled, complementing the grandeur of the high back. Finally, in contrast with the luxurious material and appearance of the seat, the base features classic MEF clean lines using polished metal. The overall silhouette of the chair, its detailed tufting, substantial and unusual proportions, as well as its customary MEF metallic base makes the chair easily recognizable as an MEF piece, and distinct from other seating designs.

**SEC's Infringing Piece: "The Banquet"**



**<u>MEF's Paramount Bar Stool</u>**




MEF's Paramount Bar Stool Trade Dress Design: has a distinctive appearance that incorporates many of the MEF-standard design features. The stool's distinctive appearance is defined by its sleek, polished metallic frame common to all MEF furniture, as well as the cushioned seat which incorporates luxurious material which stands in contrast with the simple frame. This contrast is quintessential to the MEF design. The frame's straight, clean lines are enhanced by subtle and unique architectural details such as the placement of horizontal support. The stool's individual design elements, as well as in combination, make the Paramount Bar Stool distinct from other stool designs in the market and unmistakeably an MEF design.

**<u>SEC's Infringing Piece: "The Stool"</u>**

